DivX, LLC v Harman Intl. Indus., Inc. (2025 NY Slip Op 02033)

DivX, LLC v Harman Intl. Indus., Inc.

2025 NY Slip Op 02033

Decided on April 08, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 08, 2025

Before: Moulton, J.P., González, Scarpulla, Higgitt, Michael, JJ. 

Index No. 656816/21|Appeal No. 4076|Case No. 2024-05053|

[*1]DivX, LLC, Plaintiff-Respondent-Appellant,
v
Harman International Industries, Inc., Defendant-Appellant-Respondent.

Jenner & Block LLP, New York (Adam Unikowsky of counsel), for appellant.
Morrison & Foerster LLP, New York (Joseph R. Palmore of counsel), for respondent.

Order, Supreme Court, New York County (Andrew Borrok, J.), entered July 8, 2024, which, to the extent appealed from as limited by the briefs, denied the motion of defendant Harman International Industries, Inc. for summary judgment with respect to the scope of products covered under the parties' license agreement, denied Harman's motion for summary judgment with respect to the parties' separate release agreement, granted partial summary judgment to plaintiff DivX, LLC on that issue, and denied the motion of DivX for summary judgment with respect to enforcement of the liquidated damages provision in the parties' license agreement, granted summary judgment to Harman on that issue, unanimously modified, on the law, to reverse so much of the order that invalidated the liquidated damages provision as a matter of law, and otherwise affirmed, without costs.
This suit concerns the scope of an amended license agreement between DivX, a developer of novel technology to compress, transmit, protect, and play back video files and Harman, a manufacturer and seller of audio and video system components and devices for consumers and automakers. DivX alleges in its complaint that Harman breached the amended license agreement by failing to pay certain royalty fees and by selling infotainment systems that decoded DivX's files without ensuring that the systems were DivX certified. The license agreement, as amended, is governed by California law.
Supreme Court properly denied Harman's motion for summary judgment with respect to the scope of royalties owed under the parties' license agreement, as amended. Here, the evidence showed that the license agreement is reasonably susceptible to multiple interpretations, and DivX does not appeal from the court's denial of summary judgment on this issue (see Brown v Goldstein , 34 Cal App 5th 418, 432-433 [2019]). Section 2.2 of the license agreement states that Harman's license covers in-car products sold under a Third Party In-Car Brand (i.e. , Hyundai) "and/or" under a Licensee Brand (i.e., Harman's brand). At a minimum, this disjunctive language may describe a license extending beyond the Hyundai-only products encompassed within the definition of "Third Party In-Car Brand."
The parties' extrinsic evidence does not resolve the issue (see id. at 433). The parties' contemporaneous communications described the fourth amendment to the license agreement as pertaining to a "global agreement" for "in-car" units, with Harman's internal emails acknowledging that sales to non-Hyundai brands would be incorporated into the scope of the license. While Harman contends that DivX was interested in certifying an infotainment system for Hyundai only, this conflicts with Harman's evidence and presents an issue for the factfinder to resolve.
Harman's argument that the products at issue were not "Licensee Products" under Section 2.2 because they do not "incorporate DXN Technology," and thus do not fall within the scope of the royalty provisions[*2], is also a disputed issue. According to DivX's expert, the "CTK" video files contained DivX's proprietary packed B-frame technology, an innovation that improved the transmission of the speed of large files. Given this (and other) evidence, the court properly determined that there was an issue of fact surrounding whether the CTKs incorporated DivX's technology.
The court also properly denied Harman's motion for summary judgment with respect to the parties' separate release agreement, finding that DivX's claims against Harman were expressly preserved in the carveout to that separate release agreement. In the release agreement, DivX agreed to release non-party Samsung and its affiliates, including Harman, from claims that "arise or relate to in any way" DivX's "Patents, including without limitation, the acquisition, licensing, or enforcement of Patents." However, the carveout provided that "nothing" in the release would "have any effect whatsoever" on the parties' "rights or obligations under any Technology License Agreement," and would not be used as a defense in any "current of further dispute concerning . . . any Technology License Agreement." The carveout would "not apply to the patents embodied in any part other than the DivX Products."
Interpreting this language, the court properly determined that the parties expressly carved out any dispute "relating to technology licensing agreements," such as this license agreement. Harman does not dispute that the license agreement at issue qualifies as a "Technology License Agreement" under the release. The court also properly determined that Harman's reading was irreconcilable with the significant extrinsic evidence offered by DivX showing that the carveout was explicitly intended to preserve any contractual claims arising out of this litigation and the then-ongoing audit.
However, the court improperly invalided the liquidated damages provision found in Section 5.7 of the license agreement and should not have granted summary judgment to Harman on that issue as a matter of law. California's liquidated damages law reflects the statutory policy which favors the validity of such agreements (see Weber, Lipshie & Co. v Paul D. Christian , 52 Cal App 4th 645, 656 [1997], review denied, 1997 Cal LEXIS 2196 [1997]). Under California law, a liquidated damages provision is presumptively valid unless "the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made" (Cal Civ Code § 1671[b]; see also Weber , 52 Cal App 4th at 656).
Harman failed to meet its burden of invalidating the liquidated damages provision as a matter of law. DivX submitted expert testimony to show the liquidated damages provision was designed to provide a method to calculate any potential harm that could result from noncompliance, such as harm to goodwill, which often can be difficult or impracticable to quantify. California courts have recognized [*3]that liquidated damages provisions can compensate for this type of harm (see El Centro Mall, LLC v Payless ShoeSource, Inc. , 174 Cal App 4th 58, 64-65 [2009]). DivX's expert also explained that, among other things, the liquidated damages provision was meant to compensate for the substantial expenditure of resources and time that would result from investigating, auditing, and resolving Harman's underreporting. Particularly given the sophisticated parties and the long history of contractual relations and negotiations between them, Harman has failed to overcome the presumption of validity of the liquidated damages provision as a matter of law. The issue of whether it is an unenforceable penalty should be resolved by the factfinder.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 8, 2025